**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **CAROLYN D. MCBRIDE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 4:22-cv-985-SDJ-KPJ |
| | § | |
| **MARTIN O'MALLEY,** | § | |
| ***Commissioner of Social Security,*** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Carolyn D. McBride ("Ms. McBride") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB"). Having considered the briefs submitted by the parties and the administrative record, the Court recommends the Commissioner's final decision be **AFFIRMED**.

## I.    APPLICABLE LAW

**A.    Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not

1

engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

## B.    Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[2] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (per curiam)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. McBride was born in 1959, has a bachelor's degree in business administration, and was previously employed as a certified public accountant, assistant controller, and chief financial officer.[3] *See* Tr. 72, 93, 315. On February 11, 2018, Ms. McBride filed an application for DIB, alleging disability since December 15, 2017, due to her major depressive disorder. *See* Tr. 103–04, 350. The Social Security Administration (the "SSA") denied Ms. McBride's claim initially on May 1, 2018, and upon reconsideration on November 6, 2018. *See* Tr. 160, 168. Thereafter, Ms. McBride filed a request for a hearing. *See* Tr. 171. On December 12, 2019, Administrative Law Judge Susanne Cichanowicz ("ALJ Cichanowicz") held a hearing. *See* Tr. 37–63. The hearing was attended by Ms. McBride, her attorney, and a vocational expert ("VE"). Tr. 37.

On January 31, 2020, ALJ Cichanowicz issued an unfavorable decision denying Ms. McBride's claim. *See* Tr. 135–46. Ms. McBride requested that the Appeals Council review ALJ Cichanowicz's unfavorable decision. *See* Tr. 151–57. On June 24, 2020, the Appeals Council remanded this matter to an ALJ for the resolution of three issues: (1) the hearing decision did not adequately evaluate Ms. McBride's impairments; (2) the RFC assessed no correlating non-exertional limitation consistent with ALJ Cichanowicz's finding that Ms. McBride had moderate limitations in the area of adapting or managing oneself; and (3) the hearing decision did not consider the effect of hand tremors on Ms. McBride's functional abilities or its potential for eroding the occupational base. *See* Tr. 153–54. The Appeals Council ordered that upon remand, the Administrative Law Judge shall (1) further evaluate the nature, severity, and effects of Ms. McBride's medically determinable impairments; (2) further evaluate Ms. McBride's mental

---

[3] Documents 9-1 through 9-7 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

impairments in accordance with the special technique described in 20 C.F.R. 404.1520a; (3) give further consideration to Ms. McBride's maximum RFC during the entire period at issue; and (4) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to determine whether Ms. McBride has acquired any skills that are transferable to other occupations under the guidelines. Tr. 154.

On June 7, 2022, Administrative Law Judge Jeffrey Morgan ("ALJ Morgan") held a hearing. *See* Tr. 64–102. The hearing was attended by Ms. McBride, her attorney, and a VE. Tr. 64. On July 7, 2022, ALJ Morgan issued an unfavorable decision denying Ms. McBride's claim. Tr. 12–30. In his decision, ALJ Morgan found Ms. McBride met the insured status requirements of the Social Security Act (the "Act") through December 31, 2022. Tr. 15. At step one, ALJ Morgan found that Ms. McBride had not engaged in substantial gainful activity since December 15, 2017, her alleged onset date ("AOD"). Tr. 15. At step two, ALJ Morgan found that Ms. McBride had the following severe impairments: depressive disorder, anxiety disorder, delusional disorder, somatic symptom disorder, post-traumatic stress disorder ("PTSD"), personality disorder, alcohol use disorder, benzodiazepine use disorder, and hand tremors. Tr. 15. At step three, ALJ Morgan found that none of Ms. McBride's impairments, alone or in combination, met or medically equaled a Listing. Tr. 15. Because ALJ Morgan found that none of the impairments met a Listing, he assessed Ms. McBride's RFC. *See* Tr. 20–27. ALJ Morgan found Ms. McBride had the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and apply simple routine instructions, but must avoid fast-paced quota-based production-rate work. [Ms. McBride] can frequently interact with supervisors and coworkers and occasionally interact with the general public. She can adjust to occasional changes in work setting or routine. [Ms. McBride] can no more than frequently perform handling and fingering.

Tr. 20. At step four, ALJ Morgan found that Ms. McBride was unable to perform past relevant work because the overall demands of her past relevant work were not consistent with the RFC assessed. Tr. 27–28. At step five, considering Ms. McBride's age, education, work experience, and RFC, ALJ Morgan found that there are jobs that exist in significant numbers in the national economy that Ms. McBride can perform. Tr. 28–29. Due to this finding, ALJ Morgan found that Ms. McBride was not disabled within the meaning of the Act. Tr. 29–30.

Ms. McBride requested that the Appeals Council review ALJ Morgan's unfavorable decision. *See* Tr. 310–11. On October 27, 2022, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, ALJ Morgan's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. McBride filed her appeal to this Court on November 21, 2022. *See* Dkt. 1.[4]

### III.    ANALYSIS

On appeal, Ms. McBride contends that ALJ Morgan's decision is not supported by substantial evidence. Dkt. 13 at 9. Ms. McBride raises five arguments in support of this contention: (1) ALJ Morgan improperly substituted his own medical judgment to determine the functionally limiting effects of Ms. McBride's hand tremors; (2) ALJ Morgan failed to consider Dr. Cameron's opinion regarding Ms. McBride's memory impairment in determining the RFC; (3) ALJ Morgan failed to consider the effects of the additional functional limitations noted by Dr. Abdebogun and Dr. Cameron; (4) ALJ Morgan's determination is inconsistent with the medical-vocational guidelines; and (5) ALJ Morgan failed to establish the existence of work, in significant numbers, which plaintiff can perform. Dkt. 13 at 9–15.

---

[4] A claimant has sixty days to file an appeal. 20 C.F.R. § 404.981. The sixty days begins running five days after the decision is mailed. *See* Tr. 2.

A.    **RFC Determination**

Ms. McBride argues that the ALJ failed in three ways when determining the RFC: (1) ALJ Morgan improperly substituted his own medical judgment to determine the limiting effects of Ms. McBride's hand tremors; (2) ALJ Morgan failed to consider Dr. Cameron's opinion regarding Ms. McBride's memory impairment in determining the RFC; and (3) ALJ Morgan failed to consider the effects of the additional functional limitations noted by Dr. Abdebogun and Dr. Cameron. Dkt. 13 at 9–12.

The RFC is an assessment of a claimant's ability to do work on a sustained basis in an ordinary work setting despite the claimant's impairments. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). The RFC determination is based on "all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), including, but not limited to: medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citations omitted). "Determining a claimant's [RFC] is the ALJ's responsibility, and [he] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (first citing *Ripley*, 67 F.3d at 557; and then citing *Holman v. Massanari*, 275 F.3d 43 (5th Cir. 2001)). However, "[i]n determining a claimant's RFC, an ALJ may not—without medical experts' opinions—derive the applicant's RFC solely from evidence of his claimed medical conditions." *Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-1948, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (citing *Ripley*, 67 F.3d at 557). The ALJ is not allowed to rely on his "own

unsupported opinion of the limitations the applicant's medical conditions might present." *Id.* (citing *Ripley*, 67 F.3d at 557). The ALJ "must be careful not to succumb to the temptation to play doctor." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

### 1.    Lack of Medical Opinion Evidence Regarding Hand Tremors

First, Plaintiff contends that ALJ Morgan's RFC determination is not supported by substantial evidence because there is no medical opinion evidence supporting the limitation related to the hand tremor. Dkt. 13 at 10. The Commissioner argues that ALJ Morgan was not required to obtain the RFC finding directly from a medical opinion because this would nullify the ALJ's role as factfinder. Dkt. 14 at 5.

"Under the regulations and our case law, the determination of [RFC] is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). An ALJ, in determining the RFC, "needs to understand both the conditions a claimant suffers from and how those conditions limit the claimant's ability to work." *Mindy C. v. Kijakazi*, No. 20-cv-222, 2022 WL 3337770, at *8 (N.D. Tex. June 16, 2022) (citing *Ripley*, 67 F.3d at 557–58), *R & R adopted*, 2022 WL 3210357 (N.D. Tex. Aug. 9, 2022). The Fifth Circuit has held that "the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete." *Gutierrez v. Barnhart*, No. 4-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (citing *Ripley*, 67 F.3d at 557). "Instead, the salient issue is whether substantial evidence exists in the record to support the ALJ's decision." *Id.* (citing *Ripley*, 67 F.3d at 557). "This does not mean that an ALJ may rely on his own medical opinion in arriving at the types of work a claimant is still capable of performing." *Mindy C.*, 2022 WL 3337770, at *8 (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009)). "But the ALJ may rely on the claimant's testimony

8

to determine how an impairment affects his ability to work." *Id.* (citing *Guitierrez*, 2005 WL 1994289, at *7).

Here, ALJ Morgan assessed a limitation in the RFC for Ms. McBride's hand tremors, specifically that Ms. McBride "can no more than frequently perform handling and fingering." Tr. 20, 24. ALJ Morgan developed this limitation by evaluating the medical evidence as well as Ms. McBride's testimony at the hearing, and his accompanying analysis was detailed, thorough, and well-cited. *See* Tr. 22–24. In making his RFC determination, the ALJ summarized the medical evidence related to the hand tremors as follows:

> The medical evidence includes various references to tremors with a note in November 2017 indicating tremors were observed (Exh. 2F/16). Notably, [Ms. McBride] later reported tremor with use of Klonopin (Exh. 3F/9), but none were clinically observed (Exh. 3F/10). Inpatient records initially included no findings of abnormal movements (tics, tremors, TD, etc.) (Exh. 5F/3) and [Ms. McBride] denied tremors upon admission (Exh. 5F/7), but a later neurological examination indicated mild bilateral hand tremor (Exh. 5F/9). As discussed in Finding 4, [Ms. McBride] had engaged in increased alcohol intake while using Klonopin prior to hospital admission (Exh. 5F/11), and alcohol and benzodiazepine use disorders were included in the inpatient diagnostic assessment (Exh. 5F/4). Dr. Taylor evaluated [Ms. McBride] in October 2018, and her report indicates no unusual or involuntary motor movements were apparent (Exh. 7F/1), but she observed that [Ms. McBride] "tended to fidget with her hands" (Exh. 7F/4).

Tr. 22–23. ALJ Morgan identified that the medical evidence contained few reports from Ms. McBride concerning the hand tremors. Tr. 22–23 ALJ Morgan also identified medical evidence that referred to "mild bilateral hand tremors" or "fidget[ing]." Tr. 22–23. ALJ Morgan further noted that the medical evidence showed that Ms. McBride reported tremors in July 2018 when she increased her alcohol intake and used Klonopin. Tr. 16, 23. ALJ Morgan further detailed that Ms. McBride was later evaluated in October 2018, and the report indicated no unusual or involuntary motor movements—only a report that she "tended to fidget with her hands." Tr. 23.

ALJ Morgan next summarized Ms. McBride's testimony regarding her hand tremors:

During testimony, [Ms. McBride] endorsed ongoing tremors in both hands that she believes are due to medications. She described the tremors as constant involuntary jerking movements in the hands that make it impossible for her to type on a computer. As noted earlier, [Ms. McBride] previously associated tremors with use of Klonopin (Exh. 3F/9), which is a benzodiazepine; however, the last clinic notes of record from August 23, 2021, show a medication regimen of Lithium ER, Paxil CR, Seroquel, and Gabapentin (Exh. 13F/11), none of which are in the benzodiazepine drug class.

In other testimony, [Ms. McBride] asserted that tremors were not as strong as the involuntary hand jerking. Said assertion suggests that there is a distinction between the alleged tremors and involuntary hand movements. However, after review of the record, the undersigned notes there are no medical findings associating the allegations of hand jerking with a distinct medically determined impairment. [Ms. McBride] denied that she could use a laptop or a computer because it is too difficult for her to type, and she is no longer "computer savvy." Upon further questioning, she testified that she was not using a computer because of tremors. However, other testimony indicates she used a computer for up to at least 30 minutes at a time when recently doing her taxes.

[Ms. McBride] denied taking medication to reduce tremors but asserted that she needs to go back to her psychiatrist to get medication for the tremors. She denied that any of her medications were adjusted due to the tremors because she is "too afraid" to make changes to the antidepressants. In response to questioning by her representative, she affirmed that hand tremors affect her ability to use a knife and fork, but she is able to feed herself. She described her handwriting as "terrible" and alleged that it is hard for her to write. Said allegations significantly exceed the reports and findings shown in May 2021 clinic notes that describe occasional muscle spasm in the left hand randomly occurring "roughly one-to-two times a day" (Exh. 13F/5). Notably, examinations in May and August 2021 showed no psychomotor abnormalities (Exh. 13F/6, 10). In other testimony, [Ms. McBride] affirmed that she was able to use a smart phone. After considering [Ms. McBride's] subjective allegations within the context of documented factors concerning tremors in the medical evidence, the undersigned finds the extent of functional difficulty subjectively alleged concerning tremors exceeds, and is inconsistent with, the documented findings of record. Nevertheless, in deference to the mild bilateral hand tremor noted in the medical record, the undersigned further finds that [Ms. McBride] can no more than frequently perform handling and fingering.

Tr. 23–24. ALJ Morgan's analysis of Ms. McBride's testimony identifies numerous contradictions: Ms. McBride testified that she believed that the tremors were due to medications, however, the medical evidence showed that the tremors were associated with the use of Klonopin,

which Ms. McBride was no longer taking, and Ms. McBride affirmed she was not taking medication to reduce the tremors and had not sought a change in her medications to help the tremors; Ms. McBride at one point described the tremors as "constant involuntary jerking movements" then later stated that they "were not as strong as the involuntary hand jerking"; and Ms. McBride testified that she no longer uses a computer because of the tremors but also testified that she used a computer for up to thirty minutes at a time when doing her taxes. Tr. 23. In addition to these contradictions, ALJ Morgan also identified that Ms. McBride testified that she had difficulty using a knife and fork and that her handwriting was "terrible" in response to her attorney's question. Tr. 23, 86–87. These two limitations are two of the more extreme limitations identified by Ms. McBride.

After considering this testimony, ALJ Morgan found that Ms. McBride's subjective allegations concerning tremors "exceed[ed], and [was] inconsistent with," the medical evidence. Tr. 23. Specifically, based on the medical evidence and contradictory statements from Ms. McBride, ALJ Morgan concluded that Ms. McBride's limitations were not as severe as she claimed and found that she was able to perform a full range of work at all exertional levels with the limitation that she could no more than frequently perform handling and fingering. Tr. 20, 22–24. Although there was no medical opinion evidence in the record regarding the effect of the tremors on Ms. McBride's ability to perform work, the Court finds that the ALJ's determination is supported by substantial evidence. *Johnny M. v. Saul*, No. 20-cv-173, 2022 WL 9597736, at *4 (N.D. Tex. Jan. 21, 2022) (finding the ALJ did not err in determining the claimant's RFC without a medical source opinion on the claimant's ability to work because the RFC determination was supported by substantial evidence); *Page v. Saul*, No. 19-cv-4435, 2020 WL 4003641, at *5 (S.D. Tex. July 15, 2020) (finding that substantial evidence supported the ALJ's RFC determination

because each part of the RFC was supported by either medical evidence or the claimant's testimonial evidence); *Mindy C.*, 2022 WL 3337770, at *8 (finding that the ALJ's RFC determination was supported by substantial evidence notwithstanding that the ALJ did not identify in his decision any medical opinion that was the basis for the RFC finding); *Hardwick v. Comm'r of Soc. Sec.*, No. 21-cv-9, 2022 WL 18144925, at *9 (W.D. La. Dec. 21, 2022), *R. & R. adopted*, 2023 WL 123606 (W.D. La. Jan. 6, 2023) (finding the ALJ's determination that the claimant could perform sedentary work was based on substantial evidence when she made the determination from the claimant's medical records).

### 2.    Non-Exertional Limitations

Ms. McBride's second and third arguments concern whether ALJ Morgan's non-exertional RFC determination was supported by substantial evidence because he did not find Dr. Adebogun's and Dr. Cameron's opinions persuasive and did not "properly" consider all of the mental limitations noted in the opinions of Dr. Abdebogun, Dr. Cameron, and Dr. Taylor. Dkts. 13 at 10–12; 15 at 7–9. Ms. McBride argues that if the ALJ had found these opinions persuasive and given weight to each of the findings contained therein, he would have found greater non-exertional limitations, specifically that Ms. McBride lacks average memory. *Id.* The Commissioner argues that the ALJ was not required to adopt these opinions "verbatim" when determining the RFC. Dkt. 14 at 7. The Commissioner argues that, under the applicable regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Under the revised rules for the evaluation of medical opinion evidence,[5] the ALJ must explain in his determination how persuasive he finds each medical opinion in the record. *See* 20 C.F.R. § 404.1520c(b). "The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the [c]ourt to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Baker v. Kijakazi*, No. 21-cv-3126, 2023 WL 2414011, at *13 (N.D. Tex. Mar. 7, 2023) (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 20-cv-46, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)). Persuasiveness is based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors supporting or detracting from the persuasiveness of the opinion. *Id.* § 404.1520c(c)(1)–(5). The "most important factors," and the only factors the ALJ *must* discuss, are supportability and consistency. *See id.* § 404.1520c(b)(2).

Supportability and consistency are defined as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.

(2) Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.

*Id.* § 404.1520c(c)(1)–(2). Therefore, supportability refers to the relationship between the conclusions drawn by the medical opinion and the evidence used to support those conclusions, while consistency refers to "how well a medical source is supported, or not supported, by the entire record." *See, e.g.*, *Henderson-Washington v. Comm'r of Soc. Sec.*, No. 23-cv-6, 2023 WL

---

[5] The revised rules apply to claims filed on or after March 27, 2017, and no longer permit deference to be given to any medical opinion. *See* 20 C.F.R. § 404.1520c(a).

9005588, at *3 (N.D. Tex. Dec. 28, 2023) (quoting *Heleodoro C. v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-3520, 2022 WL 4359148, at *3 (N.D. Tex. July 20, 2022), *R. & R. adopted sub nom. Castro v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022)) (internal quotation marks omitted). The ALJ must cite "specific evidence in the record" supporting his supportability and consistency determination. *See, e.g.*, *Morgan v. Kijakazi*, No. 22-cv-631, 2023 WL 6238052, at *6 (E.D. Tex. Aug. 31, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 6221773 (E.D. Tex. Sept. 25, 2023).

The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are "brief and conclusory" and "lack 'explanatory notes' or 'supporting objective tests and examinations.'" *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (first citing *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005); and then citing *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)). District courts in this Circuit have found that under the new regulations, brief and conclusory medical opinions, unsupported by relevant medical evidence, lack supportability. *See, e.g.*, *Bruen v. Kijakazi*, No. 20-cv-278, 2022 WL 452411, at *3 (S.D. Miss. Feb. 14, 2022) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect.'" (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))); *Benson v. Saul*, No. 20-cv-1974, 2022 WL 868706, at *16 (N.D. Tex. Mar. 8, 2022) (finding the ALJ properly considered a medical opinion unpersuasive because it consisted of "a brief and conclusory check-box form that did not include any explanatory notes or supporting tests or examinations"), *R. & R. adopted*, No. 20-cv-1974, 2022 WL 865886 (N.D. Tex. Mar. 23, 2022); *Stephens v. Saul*, No. 20-cv-823, 2020 WL 7122860 *8 (N.D. Tex. Dec. 4, 2020) (finding the ALJ could discount the medical opinion "for lacking any

14

substantive explanation" when it consisted of "a brief and conclusory check-box form that did not include any explanatory notes or supporting tests or examinations" (citing *Foster*, 410 F. App'x at 833)).

Here, ALJ Morgan found the opinion of Dr. Abdebogun unpersuasive. Tr. 24. In reaching this conclusion, the ALJ stated:

> The undersigned find[s] that the degree of limitation implied in Dr. Abdebogun's opinion statement is unpersuasive. His findings and opinions are provided on a form utilizing a checklist format without appropriate support or citation to the medical record. Further, his opinions are inconsistent with the evidence of record, including his own contemporaneous treatment notes, which do not reflect such extreme limitations for the requisite duration. For example, treatment notes from 2021 show sustained improvement with [Ms. McBride] denying depression, endorsing mood stability, and affirming the effectiveness of Paxil in relieving depressive symptoms. Further, she reported medications were very effective for "taking the edge off," which allowed her to feel much more at ease, and she denied panic attacks (Exh. 13F/5, 6, 9). Moreover, Dr. Abdebogun's opinion statement fails to recognize the symptomatic improvement achieved after a short course of inpatient hospitalization in July 2018 in which [Ms. McBride] was established on a new regimen of medications that apparently did not include benzodiazepines. Specifically, at the time of discharge, thought processes were logical with intact thought association, [Ms. McBride] denied depression, hallucinations, or suicidal/homicidal ideation, insight was good, judgment and reality testing were intact, and she was independent with activities of daily living (Exh. 5F/11).

Tr. 24. ALJ Morgan found Dr. Abdebogun's opinion unsupported because it was based upon a check-box format that led to conclusions that were contradicted by evidence within Dr. Abdebogun's own treatment notes. Tr. 24. ALJ Morgan also found that the medical opinion was inconsistent with other medical evidence in the record, emphasizing that Dr. Abdebogun did not properly consider the effect of medicine in treating the degree of limitations found in his medical opinion. Tr. 24. Given the supportability and consistency issues discussed by ALJ Morgan, the Court finds that the ALJ's persuasiveness finding was supported by substantial evidence. Accordingly, the ALJ did not err in not giving weight to the degree of limitation found in Dr. Abdebogun's opinion statement.

In his decision, ALJ Morgan also found the medical opinion statement of Dr. Cameron unpersuasive. Tr. 25. In reaching this conclusion, the ALJ stated:

> The undersigned finds Dr. Cameron's opinions asserting multiple broad work-related functional restrictions are not persuasive. Dr. Cameron conducted a one-time examination of [Ms. McBride] a month prior to the hearing. There is no indication in the record that she had a role in [Ms. McBride's] treatment. Her reference to [Ms. McBride's] treatment with Dr. Abdebogun is brief and reflects no consideration of the improvement achieved with medication management (e.g., Exh. 13F/5, 6, 9) or the increased symptomatic effects of increased alcohol use while on benzodiazepine medication (Exh. 5F/11). Moreover, apart from partial application of the WAIS-IV to obtain a Working Memory Index, Dr. Cameron's testing consisted of an accumulation of [Ms. McBride's] self-reports utilizing various inventories, surveys, self-rating scales, checklists, and questionnaires. The undersigned further finds Dr. Cameron's opinions regarding physical limitations are beyond her area of expertise and are inconsistent with the treatment evidence, which does not contain a diabetes diagnosis, a fact [Ms. McBride] verified during hearing testimony. Dr. Cameron's opinions are inconsistent with the longitudinal record, which does not support such extreme limitations and instead shows that mental symptoms can be managed with use of appropriate medications.

Tr. 25–26. ALJ Morgan found Dr. Cameron's opinion unsupported because Dr. Cameron relied on inventories, surveys, self-rating scales, checklists, and questionnaires filled out by Ms. McBride; there was no indication that Dr. Cameron had a role in Ms. McBride's treatment; and the physical limitations opined upon were outside of Dr. Cameron's area of expertise. Tr. 25–26. ALJ Morgan also found that Dr. Cameron's opinion was inconsistent with other evidence in the record because other treatment evidence did not contain a diabetes diagnosis, did not support such extreme limitations, and showed that the mental symptoms could be managed by appropriate medications. Tr. 25–26. Given the supportability and consistency issues discussed by ALJ Morgan, the Court finds that ALJ Morgan's persuasiveness finding was supported by substantial evidence. *E.g.*, *Benson*, 2022 WL 868706, at *16 (N.D. Tex. Mar. 8, 2022) ("The ALJ's reasons for finding the check-box form unpersuasive goes to the supportability of [the medical] opinion.").

Accordingly, ALJ Morgan did not err in not giving weight to the degree of limitation found in Dr. Cameron's opinion statement, including the working memory index finding contained therein.

The remainder of Ms. McBride's arguments concerning ALJ Morgan's RFC determination ask the Court to reweigh the evidence provided by the medical sources and find that ALJ Morgan failed to properly weigh the evidence. Dkt. 13 at 11–12. The Court declines to do so. It is not the Court's role to "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citation omitted). Ms. McBride further contends that although ALJ Morgan considered and explained some of Ms. McBride's mental limitations in the RFC determination, he did not consider all of the mental limitations found by the medical sources. *See* Dkts. 13 at 12; 15 at 8. Contrary to Ms. McBride's assertion, the ALJ is not required to articulate "each and every" limitation contained in a medical source statement. *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *7 (E.D. La. Nov. 18, 2022) (citing *Price v. Astrue*, 401 Fed. App'x 985, 987 (5th Cir. 2010)), *R. & R. adopted*, 2023 WL 35799 (E.D. La. Jan. 3, 2023). Instead, the ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price*, 401 Fed. App'x at 986.

After establishing Ms. McBride's medical history from January 2016 through August 2021 in great detail, *see* Tr. 15–18, ALJ Morgan reached the following conclusion regarding Ms. McBride's impairments:

> After careful consideration of the evidence, the undersigned finds that [Ms. McBride's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ms. McBride's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 21. In explaining this decision, ALJ Morgan noted Ms. McBride's testimony that she suffered from major depressive disorder which caused her to lack concentration, have a "terrible" memory, and be tired and lack motivation. Tr. 21. ALJ Morgan also recognized Ms. McBridge's testimony that she could only work on her taxes for thirty minutes a day, often had to reread things, and was no longer able to address a group of people, have a meeting, and make presentations. Tr. 21–22. ALJ Morgan also noted Ms. McBride's capacity to go to the grocery store, run errands, and go out to dinner, although she denied driving or using public transportation and later testified that she does not really go out because it makes her anxious. Tr. 22. ALJ Morgan also noted that Ms. McBride did not directly answer that she has difficulty dealing with people when questioned by counsel and that the record showed she occasionally texted and visited friends. Tr. 22.

In considering the medical opinion evidence, the ALJ found the opinions of Dr. Abdebogun and Dr. Cameron unpersuasive as discussed above. Tr. 24–26. ALJ Morgan noted, in explaining Dr. Taylor's opinion, that Ms. McBride was able to understand, carry out, and remember instructions but that her concentration was disrupted by anxiety and depression. Tr. 26. ALJ Morgan also noted that Dr. Taylor found that Ms. McBride can maintain effective social interaction but became overwhelmed easily and that she had difficulty dealing with normal pressures in a competitive work setting. Tr. 26. These observations support ALJ Morgan's limitations that Ms. McBride can understand, remember, and apply simple routine instructions, but must avoid fast-paced quota-based production-rate work; and that Ms. McBride can frequently interact with supervisors and coworkers and occasionally interact with the general public. *See* Tr. 20.

Further, ALJ Morgan did not fully agree with Dr. Forgus's opinion that Ms. McBride "could understand, remember, and carry out only simple instructions, make decisions, concentrate

for extended periods, interact with others, and respond to changes" but found that greater limitations were warranted based on the other evidence in the record. Tr. 27. ALJ Morgan similarly found that Dr. Scales's opinion, which essentially affirmed Dr. Forgus's opinion, was inconsistent with other evidence in the record. Tr. 27. Accordingly, the ALJ assessed further limitations than those recommended by Dr. Forgus and Dr. Scales. *See* Tr. 20.

ALJ Morgan engaged in a thorough discussion of all of the relevant evidence regarding Ms. McBride's mental health and associated limitations, made credibility determinations, and explained reasons for discounting some of the evidence in the record. ALJ Morgan was not required to state the RFC limitations in terms Ms. McBride prefers, "so long as the decision shows that the ALJ considered those limitations in reaching the RFC determination." *McBride v. Comm'r, SSA*, No. 22-cv-290, 2023 WL 6367712, at *11 (E.D. Tex. Sept. 13, 2023) (citing *Brouwer v. Berryhill*, No. 18-2044, 2019 WL 4954606, at *7 (S.D. Tex. July 9, 2019)), *R. & R. adopted*, 2023 WL 6324333 (E.D. Tex. Sept. 28, 2023). Thus, the Court finds that sufficient evidence supports the ALJ's RFC determination and corresponding non-exertional limitations. *Stewart v. Comm'r of Soc. Sec.*, No. 21-cv-148, 2022 WL 2078021, at *4 (N.D. Miss. June 9, 2022) (finding the ALJ's opinion was supported by substantial evidence when he engaged in a thorough discussion of the evidence which included the claimant's mental health treatment records).

**B.    The ALJ's Step Five Finding**

Ms. McBride raises two arguments regarding the step five finding: (1) ALJ Morgan's determination was inconsistent with the medical-vocational guidelines found in Appendix 2 to Subpart P of Part 404; and (2) ALJ Morgan failed to establish the existence of work, in significant numbers, which Ms. McBride could perform. Dkt. 13 at 12–15.

At step five, the ALJ has the burden to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Bowling*, 36 F.3d at 435. Under 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566, work exists in significant numbers in the national economy if it exists in significant numbers in either the region where the claimant lives or in other regions of the country. The ALJ may use the medical vocational guidelines to meet his burden. *Perez v. Heckler*, 777 F.2d 298, 301 (5th Cir. 1985) (citing *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982)). In *Perez*, the Fifth Circuit explained the guidelines as follows:

> The guidelines may be applied in a case . . . where the claimant is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. The guidelines operate by considering a claimant's [RFC], age, education, and work experience. After the ALJ determines the claimant's [RFC], age, education, and work experience, the ALJ ascertains whether the determinations coincide with those listed in the guidelines. If the factors do coincide, the guidelines direct the conclusion of whether a claimant is capable of other substantial gainful employment in the national economy. The guidelines, in effect, take administrative notice of the existence of jobs in the national economy that a person falling within the guidelines could fill.

*Id.* (internal citations omitted). Ms. McBride argues that because the jobs identified by the VE at step five were all "sedentary, unskilled, SVP 2" jobs, ALJ Morgan should have considered an RFC limited to sedentary work when applying the guidelines. Dkt. 13 at 12–13. However, as explained above, ALJ Morgan first determined Ms. McBride's RFC and *then* ascertained whether the guidelines coincided with the RFC determination. *See* Tr. 20, 28. Accordingly, the ALJ did not err by not applying limitations exceeding those found in the RFC determination when applying the guidelines.

The ALJ may also meet his burden at step five by calling on a vocational expert to testify about the jobs the claimant can perform. *Salinas v. Schweiker*, 662 F.2d 345, 348 (5th Cir.1981).

ALJ Morgan engaged a VE to testify about the jobs that Ms. McBride could perform based upon the RFC determination. Tr. 29. Ms. McBride argues that "the VE testimony does not establish the existence of work in significant numbers which the Plaintiff can perform." Dkt. 13 at 13. Specifically, Ms. McBride argues that the VE used the "equal distribution method" when arriving at her estimate of the number of jobs available. *Id.* at 13–14.

The equal distribution method operates on the assumption that all job titles within a particular Dictionary of Occupational Titles ("DOT") group exist in equal numbers in the national economy, which the Seventh Circuit found to be "illogical." *Chavez v. Berryhill*, 895 F.3d 962, 966 (7th Cir. 2018). The primary underlying flaw of this method is that it assumes that each of the narrower categories within a broader DOT category has the same number of jobs. *See Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015).

However, this is not the method employed by the VE in this case. During the hearing, the VE specifically testified that she did not apply the equal distribution method. Tr. 100. The VE described the method that she used to identify the number of jobs as follows: the VE looked at the unique occupations within the broader DOT category and used her experience to eliminate jobs that are no longer relevant in our national economy, which she testified is a large majority of the jobs within a DOT category because it has been thirty years since the unique occupations within the DOT were classified; then the VE took the total number of jobs in the DOT category and divided that by the remaining types of jobs. Tr. 98–99. The VE testified that her method also took into account the industry of the jobs because "some industries are more prevalent than others." Tr. 100. The method described by the VE took into account that certain jobs are no longer relevant and that jobs in certain industries exist in higher numbers than other industries. Tr. 98–100. The VE did not simply divide the total number of jobs by the total number of job types in the DOT

category—the main concern raised by the Seventh Circuit regarding the equal distribution method. *See Alaura*, 797 F.3d at 508 (holding that an assumption that each narrow category has the same number of jobs as each other narrow category was "preposterous"); *Chavez*, 895 F.3d at 966 (holding that an assumption that all job titles within a particular DOT job group exist in equal numbers in the national economy was "illogical").

The VE also testified that she utilized Job Browser Pro, published by SkillTRAN, in applying her methodology. Tr. 98–99. Ms. McBride argues that the number of jobs identified from Job Browser Pro does not support the number of jobs identified by the VE in her testimony. Dkt. 13 at 15. Ms. McBride simply identifies job numbers from Job Browser Pro and asserts that this total number of jobs "can certainly not be considered to be [a] significant number of jobs." *Id.* Ms. McBride does not support her argument with case law, nor does she establish with other authority that the Job Browser Pro data is the only source of job data or superior to others. Ms. McBride does not even argue that Job Browser Pro is the only source of data that the VE relied upon in determining the number of jobs available in the national economy.

At step five, an ALJ may rely upon the VE's testimony in establishing work exists in significant numbers, "provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Further, an ALJ does not have a duty to investigate and resolve apparent conflicts in the data of Job Browser Pro. *See Hariman v. Comm'r, SSA*, No. 18-cv-377, 2019 WL 4727417, at *3 (E.D. Tex. Sept. 27, 2019) ("SSR 00-4p imposes an affirmative duty on ALJs to investigate and resolve apparent conflicts with the DOT, not other sources of job information."). As discussed above, the VE explained her methodology in arriving at the number of jobs available in the national economy, providing ALJ Morgan with an adequate basis for relying on her testimony. *See* Tr. 98–100. Accordingly, Ms. McBride's assertion that the Job

Browser Pro data does not support the VE's testimony is unpersuasive. *Hunt v. Colvin*, No. 12-1117, 2013 WL 1969401, at *3 (C.D. Cal. May 13, 2013) ("That the new *Job Browser Pro* data may differ from the VE's testimony is not enough to warrant remand."). The Court finds that ALJ Morgan did not err in relying on the VE's testimony that jobs existed in significant numbers in the economy that Ms. McBride could perform.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 6th day of March, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

23